IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **TERESA RUSSELL**  Plaintiff,  vs.  **HONEYWELL INTERNATIONAL, INC.,**  Defendant.  **SHANNON DASSING, Individually and as, Executrix of Stephen Krueger, Decedent**  Plaintiff,  vs.  **HONEYWELL INTERNATIONAL, INC., a Delaware corporation, individually and as successor-in-interest to Allied-Signal, Inc.,**  Defendant.  **PATRICIA HUGHES,**  Plaintiff,  vs.  **HONEYWELL INTERNATIONAL, INC.,**  Defendant.  **KRISTI BURNETT**  Plaintiff,  vs.  **HONEYWELL INTERNATIONAL, INC.,**  Defendant.  **AUTUMN FUNKHOUSER-WARD,**  Plaintiff, | **Case No. 3:22-cv-02112-SMY**  (*Consolidated with 3:21-cv-0485 [Master Consolidated case], 3:22-cv-01661, 3:22-cv-02114, and 3:22-cv-02344*) |

1

| |
|---|
| vs.<br><br>**HONEYWELL INTERNATIONAL, INC.,**<br><br>Defendant. |

**HONEYWELL INTERNATIONAL INC.'S**
**MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT**

COMES NOW Defendant Honeywell International Inc. ("Honeywell"), pursuant to Federal Rule of Civil Procedure 56 and SDIL-LR 7.1(c), and for its Motion for Summary Judgment against Plaintiff Teresa Russell ("Plaintiff") and Memorandum in Support thereof, states as follows:

## INTRODUCTION

This is a recently filed lawsuit in a growing series of cases filed by the same lawyers against Honeywell for damages allegedly caused by industrial operations at Honeywell's facility in Metropolis, Illinois (the "Facility"). The other actions pending against Honeywell in this Court include:

- a class action asserting property-damage and medical monitoring claims on behalf of a putative class of individuals who own property near the Facility, *Steward v. Honeywell Int'l, Inc.,* No. 3:18-cv-01124-SMY (S.D. Ill. filed May 16, 2018) ("*Steward*");

- claims by the City of Metropolis and the County of Massac alleging damage to City and County property, *City of Metropolis & County of Massac v. Honeywell Int'l, Inc.*, No. 3:21-cv-00860-SMY (filed July 27, 2021); and,

- claims by the estates of persons who lived near the Facility, *Dassig v. Honeywell Int'l, Inc.,* Case No. 3:21-cv-00485-SMY (S.D. Ill. filed May 14, 2021); *Bass v. Honeywell Int'l, Inc.*, No. 3:23-cv-00002-SMY (S.D. Ill. filed Jan. 3, 2023).

2

The present case, filed on September 9, 2022, is one of four personal injury actions filed by plaintiffs' counsel in the latter half of 2022. *See Hughes v. Honeywell Int'l, Inc.*, No. 3:22-cv-01661 (filed July 26, 2022); *Burnett v. Honeywell Int'l, Inc.*, No. 3:22-cv-02114 (filed Sept. 9, 2022); *Funkhouser-Ward v. Honeywell Int'l, Inc.*, No. 3:22-cv-02344-SMY (filed Oct. 10, 2022). By agreement of the parties, abbreviated depositions of three of the personal injury plaintiffs were conducted shortly after the cases were filed. On November 1, 2022, Honeywell took the deposition of Plaintiff in this case. The full transcript of the deposition of Plaintiff is attached hereto as **Exhibit A**.

Plaintiff's First Amended Complaint was filed on April 10, 2023 and brings two personal injury counts: Count I alleges violations of the Price-Anderson Act and Count II alleges negligence. Doc. 14, First Am. Compl. at VI, ¶¶ 1-19; VII, ¶¶ 1-6. Based on the allegations in the First Amended Complaint and the deposition testimony of Plaintiff, Honeywell now moves for summary judgment because the two-year statute of limitations applicable to Plaintiff's claims (735 ILCS § 5/13-202) has run.

Plaintiff was diagnosed with multiple myeloma, a form of blood cancer, in 2011. Shortly after her diagnosis, her oncologist described to her the potential causes of multiple myeloma. Plaintiff at that time formed the belief that the Facility was the likely cause of her cancer. Having suffered the injury and acquired a belief about its cause, her claims accrued in 2011 and the two-year statute of limitations for them ran in 2013. This is sufficient for Plaintiff's claims to be dismissed.

Additionally, at some point in or before March 2020 (the onset of the COVID-19 pandemic in the United States), Plaintiff engaged her lawyers because she thought her cancer may be related to the Facility and that the lawyers would investigate this connection. There is no dispute of

material fact that this engagement commenced in or before March 2020, and Plaintiff's testimony indicates it could have been significantly earlier. In this case, the statute of limitations accrued in 2011 when Plaintiff believed her cancer diagnosis was the result of exposure to material she believed was wrongfully released from the Facility. But, even if somehow that belief did not trigger the statute of limitations, it certainly accrued no later than upon her engagement of counsel in or before March 2020—the latest possible date that could be inferred in Plaintiff's favor on the posture of this motion for summary judgment. Two years from then was March 2022, five or six months *before* Plaintiff's original Complaint was filed on September 9, 2022. Neither the discovery rule nor any other doctrine justifies or could justify Plaintiff's delay in bringing these claims. Plaintiff's suit is untimely and must be dismissed.

## STATEMENT OF FACTS

Since 2003, Plaintiff has lived in Paducah, Kentucky, about a 20-mile drive from the Facility. Russell Dep. at 7:16-20; 10:18-23. Prior to 2003, and for about 31 years total, Plaintiff lived at addresses in Metropolis that were about one mile from the Facility.[1]

Plaintiff's father worked as a comptroller at the Facility for about 45 years prior to his retirement in 1992 or 1993. Russell Dep. at 16:24-17:5; 19:8-10; 22:3-9. Her father passed in 2000 due to complications from colon cancer. Russell Dep. at 19:8-15. Plaintiff recalls regularly reading the *Metropolis Planet* around the time of her father's death and seeing articles in the paper about the Facility processing uranium and about leaks and shutdowns at the Facility. Russell Dep. at 23:5-24:22. Within a year or two of his death (2001-2002), Plaintiff learned of a compensation

---

[1] From about 1968 to 1990, Plaintiff lived at 49 Jon Street in Metropolis, about one mile from the facility. Russell Dep. at 13:2-24. From about 1990 to 1994, Plaintiff lived in Paducah, Kentucky. Russell Dep. at 13:2-7. From about 1994 to 2003, Plaintiff lived at 46 Adkins Street in Metropolis, about one mile from the facility. Russell Dep. at 12:14-24.

4

program for Facility workers who developed cancer. Russell Dep. at 19:16-20:2; 27:1-4. Plaintiff convinced her mother to apply to the program, and her mother received $150,000 on the basis that her father's working in or living near the Facility was "at least a contributing cause" of his death. Russell Dep. at 19:16-20:11.

In October 2011, Plaintiff was diagnosed with multiple myeloma, a form of blood cancer, by an oncologist in Paducah, Kentucky, Dr. Chua. Russell Dep. at 57:3-16; *see also* First Am. Compl. at V, ¶ 32. Dr. Chua referred Plaintiff to Dr. Frits van Rhee in Little Rock, Arkansas, and within several weeks of the referral Plaintiff began receiving tests and treatment in Little Rock. Russell Dep. at 38:14-39:16. Plaintiff states that Dr. van Rhee confirmed the multiple myeloma diagnosis. Russell Dep. at 57:9-16. Near the start of her tests and treatment at Dr. van Rhee's clinic, Plaintiff received information from the clinic regarding the potential causes of her cancer, including information that plants emitting things into the air can be a "major cause" of multiple myeloma. Russell Dep. at 40:6-42:10. Given her historical knowledge about the Facility, reports she had heard about leaks and releases, her understanding that her family had received $150,000 due to her father's death and its potential connection to the Facility, and this new information regarding her own cancer diagnosis and potential causes, at that time, in 2011, Plaintiff formed the belief that her multiple myeloma was probably related to the Facility:

> **Q:** Okay. And at that point in time when you heard that you thought yours was probably related to something from the facility that got wrongfully released?
> **A:** I did.

Russell Dep. at 42:11-15.

Plaintiff testified that she learned about lawyers bringing claims against Honeywell related to the facility from Craig Bass. Russell Dep. at 50:2-51:3. Mr. Bass was a former worker at

Honeywell, also had multiple myeloma, went through the same treatment program as Plaintiff, and participated in the same multiple myeloma support group as Plaintiff. Russell Dep. at 34:11-35:8; 50:2-52:23; 69:2-21 (Mr. Bass died in or about 2020 and his survivors have recently filed a wrongful death case through the same set of lawyers handling the other cases). Before the COVID-19 pandemic, Plaintiff met in-person with the Kruger Law Firm in Metropolis to investigate her potential claims against Honeywell in connection with her cancer. Russell Dep. at 50:16–52:23; 69:22-70:9 (Plaintiff testified that she met with the Kruger Law Firm in person and before the pandemic, though she did not recall whether that meeting occurred in 2019, 2018, or 2017). At the time of the initial meeting with the Kruger Law Firm, Plaintiff believed that her diagnosis was probably related to the Honeywell Facility. Russell Dep. at 52:18-23. The law firm called her back and Plaintiff later signed a contract with the Kruger Law Firm to represent her with respect to her claims, but does not remember when she signed that contract after the initial meeting. Russell Dep. at 53:1-20.

The Kruger Law Firm has been serving as plaintiffs' counsel in all of the Facility-related lawsuits filed against Honeywell in this Court since 2018. Notably, Plaintiff is not a putative class member in *Steward* because she does not live in Metropolis or within three miles of the Metropolis Facility. *See* Second Am. Compl, No. 3:18-cv-01124-SMY, at ¶ 267 (defining the class as "[a]ll property owners within the town of Metropolis, Illinois, and property owners within 3 miles of the Defendant Honeywell's Plant."). Since about 2003, Plaintiff has lived in Paducah, Kentucky, about a 20 mile drive from the Facility. Russell Dep. at 7:16-20, 10:9-23.

# LEGAL STANDARDS

### I. Summary Judgment Standard

Summary judgment should be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In determining whether there is a genuine issue of material fact, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once the moving party has met that burden, the nonmoving party may not rest on the allegations in the pleadings, but must, by affidavit or other evidence, set forth facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56; *Liu v. T & H Mach., Inc.*, 191 F.3d 790, 794-795 (7th Cir. 1999). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "If no genuine issue of material fact exists, the sole question is whether the moving party is entitled to judgment as a matter of law." *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997) (internal citation omitted).

### II. Applicable Two-Year Statute of Limitations at 735 ILCS § 5/13-202

The General Assembly has provided that a personal injury action for damages must be brought within two years after the action accrues. 735 ILCS § 5/13-202; *Golla v. General Motors Corp.*, 657 N.E.2d 894, 897 (Ill. 1995). Section 5/13-202 applies to Plaintiff's claims seeking damages from Honeywell for alleged personal injuries.[2]

---

[2] *See* First Am. Compl. (styled "First Amended Complaint for Personal Injury") at VI, ¶ 18; VII, ¶ 6; Prayer for Relief.

Generally, a personal injury claim accrues when the plaintiff suffers injury. *Golla*, 657 N.E.2d at 898. Plaintiffs may, however, invoke the discovery rule to delay the commencement of the limitations period. *Id*. The discovery rule provides that the statute of limitations begins running "when a person knows or should know, through reasonable investigation, of the injury and its wrongful causation." *Healy v. Owens-Illinois, Inc.*, 833 N.E. 2d 906, 910 (Ill. App. Ct. 2005). The plaintiff invoking the discovery rule carries the burden of "proving the date of discovery." *Hermitage Corp. v. Contractors Adjustment Co.*, 651 N.E.2d 1132, 1138 (Ill. 1995). While it is not necessary that "a plaintiff know with precision the legal injury that has been suffered," the statute of limitations begins running when "the plaintiff possesses sufficient knowledge of his injury and its cause such that would place a reasonable person on notice to ascertain its source and whether legally actionable conduct was involved." *Healy*, 833 N.E.2d at 910-913. The discovery rule dictates that "once it reasonably appears that an injury was wrongfully caused, the party may not slumber on [their] rights." *Nolan v. Johns-Manville Asbestos*, 421 N.E.2d 864, 868 (Ill. 1981). Granting summary judgment on statute of limitations grounds in personal injury actions is appropriate where "the facts are undisputed and only one conclusion may be drawn from them." *Id.* at 868–69.

## ARGUMENT

**I.      Plaintiff's claims are barred by the two-year statute of limitations at 735 ILCS § 5/13-202**

Plaintiff brings this case for damages related to her development of multiple myeloma. First Am. Compl. at V, ¶ 32. Plaintiff has known of her injury since 2011, eleven years prior to filing the original Complaint on September 9, 2022. Russell Dep. at 57:3-16 (October 2011 diagnosis of multiple myeloma by Dr. Chua). At that time, she already knew of the Facility's

operations, had read about releases from the Facility and knew her family had received compensation due to her father's death. Near the start of her tests and treatment at Dr. van Rhee's clinic in 2011, Plaintiff received information from the clinic regarding the potential causes of her cancer. Russell Dep. at 40:6-42:15. At that time, Plaintiff formed the belief that her multiple myeloma was caused by something wrongfully released from the Facility. Russell Dep. at 42:11-15 ("*Q. Okay. And at that point in time when you heard that you thought yours was probably related to something from the facility that got wrongfully released? A. I did.*").

Under Illinois law, Plaintiff's diagnosis and her belief that her injuries may have been caused by the Facility—both of which occurred in 2011—triggered the running of the statute of limitations. *See Hadley v. AstraZeneca Pharms. PLC*, No. 18-CV-1068-JPG-DGW, 2018 WL 4491184, at *6 (S.D. Ill. Sept. 19, 2018) ("Although the date of [the plaintiff's] alleged injury is unclear, the most recent date he knew or should have known of that injury was 2008 when he was diagnosed with Brugada syndrome. To be within the statute of limitations, he would have had to have filed his lawsuit within two years of his diagnosis."); *Solis v. BASF Corp.*, 979 N.E.2d 419, 430 (Ill. App. Ct. 2012) ("[T]he limitations period commences when the plaintiff is injured, rather than when the plaintiff realizes the consequences of the injury or the full extent of her injuries").

The statute of limitations began running in 2011 irrespective of whether Plaintiff then had a factual basis or technical theory to connect the Facility to her injuries; her duty of inquiry arose when she knew of her injury and had a belief about its potential cause. *See Carlson v. Fish*, 31 N.E.3d 404, 411 (Ill. App. Ct. 2015) ("The law is well settled that once a party knows or reasonably should know both of his injury and that it was wrongfully caused, the burden is upon the injured person to inquire further as to the existence of a cause of action."); *Mitsias v. I-Flow Corp.*, 959 N.E.2d 94, 105 (Ill. App. Ct. 2011) ("[P]laintiff's duty of inquiry begins well before she can be

9

certain that defendant's conduct satisfies all elements of a particular cause of action, as long as she is aware that her injury might have been 'wrongfully caused' in a general, non-technical sense.").

Despite her belief in 2011 that the Facility may have wrongfully caused her injury, Plaintiff may contend that it was not until her interactions with the Kruger Law Firm that her claim accrued. But even then, Plaintiff's claims would still not be timely because she engaged the Kruger Law Firm to investigate the claims before the COVID-19 pandemic. Russell Dep. at 52:4-16; 69:22-70:9 (Plaintiff testified that she met with the Kruger Law Firm in person and before the pandemic, though she could pinpoint the year that occurred to 2019, 2018, or 2017).[3] Thus, the limitations period would have expired no later than in March 2022, five to six months before the original Complaint was filed on September 9, 2022.

When Plaintiff engaged her attorneys, she was on notice that her injury may have been wrongfully caused. *See Hoffman v. Orthopedic Sys., Inc.*, 765 N.E.2d 116 (Ill. App. Ct. 2002). In *Hoffman*, the plaintiff awoke from a spinal surgery with a series of injuries caused during the surgery. *Id.* at 119. Shortly after the surgery, medical personnel at the hospital gave her varied explanations for what had potentially gone wrong. *Id.* (plaintiff received "a different story from everybody"). Within six months of the surgery, plaintiff retained an attorney to investigate, requesting that the attorney "look into whether or not there was any doctor malpractice relating to

---

3 On March 9, 2020, the Governor of Illinois declared all counties of the State to be disaster areas due to the COVID-19 outbreak. *Executive & Administrative Orders*, State of Illinois, at https://www.illinois.gov/government/executive-orders.html. On March 11, 2020, the World Health Organization declared COVID-19 a global pandemic. *WHO Director-General's opening remarks at the media briefing on COVID-19 - 11 March 2020*, World Health Organization (Mar. 11, 2020), at https://www.who.int/director-general/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020. On March 13, 2020, the President declared a nationwide emergency covering all states and territories including Illinois. *COVID-19 Emergency Declaration*, Federal Emergency Management Agency (Mar. 14, 2020), at https://www.fema.gov/press-release/20210318/covid-19-emergency-declaration.

what had happened." *Id.* The record before the court did not contain evidence showing any results of that requested investigation. *Id.* at 122. In April 1998, plaintiff returned to the same hospital for knee surgery and was told by a physician that an internal hospital investigation had led doctors to conclude that her injuries from the 1995 surgery were caused by the spinal surgery table used for the surgery. *Id.* at 119-20. The next month, plaintiff sued the manufacturer of the table and the surgeons. *Id.* at 120. The manufacturer moved for summary judgment on statute of limitations grounds, which the circuit court granted and the appellate court affirmed. *Id.* The appellate court explained:

> Significantly, plaintiff retained an attorney within six months of her 1995 operation, demonstrating that she then was on inquiry as to whether the injury was wrongfully caused, thereby commencing the two-year limitations period within which to take appropriate legal action. Her own reported conversations with medical personnel and her retention of an attorney to investigate demonstrated that she knew she had suffered an injury and that the injury may have been wrongfully caused.

*Id.* at 122. Thus, the plaintiff's duty to investigate her claims accrued not when she had a clear theory about the cause of the injury, but rather when she "knew she had suffered an injury and that the injury may have been wrongfully caused." *Id.*; *accord Carlson v. Fish*, 31 N.E.3d at 411; *Mitsias v. I-Flow Corp.*, 959 at 105.

Accordingly, even if Plaintiff's claims here did not accrue when she was diagnosed in 2011, they necessarily accrued in or prior to March 2020 when she engaged her counsel to pursue them. *See Knox College v. Celotex Corp.*, 430 N.E.2d 976, 980 (Ill. 1981) (noting that "the acquisition of knowledge that one has a cause of action against another for an injury he has suffered" is more than what is required to trigger the running of the limitations period); *see also Paulsen v. Abbott Lab'ys.*, 39 F.4th 473, 477-78 (7th Cir. 2022) (holding that the plaintiff's complaint was time-barred where, among other events, the plaintiff's cousin made a post four years

11

prior to the lawsuit alleging that the plaintiff's injury was caused by the defendant and suggesting starting a class action lawsuit about the issue).

The discovery rule does not support the timeliness of Plaintiff's claims.[4] Here, there is no need to speculate about whether Plaintiff knew her cancer diagnosis was, in her mind, the result of Honeywell's operations at the facility. She admits she knew in 2011. Russell Dep. at 42:11-15. And, she asked an attorney to investigate this theory before March of 2020. Russell Dep. at 50:16–52:23; 69:9-70:9. Either one of these events is sufficient under the law to trigger the statute of limitations, even under the discovery rule. The material facts show Plaintiff's claims are untimely and must be dismissed.

## II.     No Other Legal Doctrine Justifies Plaintiff's Failure to Timely Bring Her Claims

### A.     The *American Pipe* tolling doctrine does not apply to Plaintiff's claims because, among other reasons, Plaintiff is not a putative class member in *Steward*

Under the *American Pipe* doctrine, "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974). The purpose of the doctrine tolling the statute of limitations applicable to individual class members is to protect their respective claims. *Collins v. Vill. of Palatine, Illinois*, 875 F.3d 839, 845 (7th Cir. 2017); *In re Allstate Corp. Sec. Litig.*, 966 F.3d 595, 615 (7th Cir. 2020) ("The *American Pipe* rule eliminates the need for members of the putative class to rush to court to protect their rights while class certification is still pending and uncertain in the original action.").

---

[4] It is Plaintiff's burden to invoke the discovery rule and affirmatively prove the date of discovery. *Hermitage Corp. v. Contractors Adjustment Co.*, 651 N.E.2d 1132, 1138 (Ill. 1995). Plaintiff has not pled or otherwise established facts sufficient to invoke the discovery rule.

Plaintiff may argue, relying on the *American Pipe* doctrine, that the filing of the *Steward* class action in 2018 tolled her claims. But Plaintiff is not a putative class member in *Steward* because she does not live in Metropolis or within 3 miles of the Metropolis Facility. *See* Second Am. Compl., No. 3:18-cv-01124-SMY, at ¶ 267 (defining the class as "[a]ll property owners within the town of Metropolis, Illinois, and property owners within 3 miles of the Defendant Honeywell's Plant."). Since 2003, Plaintiff has lived in Paducah, Kentucky—more than three miles away from the Facility. Russell Dep. at 7:16-20; 10:18-23. The *American Pipe* tolling doctrine thus does not apply to Plaintiff's claims.[5]

        B.      <u>Equitable tolling does not excuse Plaintiff's untimely claims</u>

"The doctrine of equitable tolling permits a court to excuse a plaintiff's failure to comply with a statute of limitations where 'because of disability, irremediable lack of information, or other circumstances beyond his control,' the plaintiff cannot reasonably be expected to file suit on time." *Williams v. Bd. of Rev.*, 948 N.E.2d 561, 567 (Ill. 2011) (quoting *Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir. 1996)).

Honeywell anticipates that Plaintiff may argue that her claims should be equitably tolled because they involve complicated factual matters of which she was not sufficiently apprised until

---

[5] Even if Plaintiff was a putative class member in *Steward*, her claims here would still not be tolled under *American Pipe* because they are different from the plaintiffs' claims in *Steward*. Here, Plaintiff alleges personal injury, not property damage or medical monitoring as in *Steward*. The pendency of a property damage/medical monitoring class action cannot toll a personal injury/wrongful death case under *American Pipe*. *See Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354 (1983) (*American Pipe* "should not be read, however, as leaving a plaintiff free to raise different or peripheral claims following denial of class status. . . . Claims as to which the defendant was not fairly placed on notice by the class suit are not protected under *American Pipe* and are barred by the statute of limitations.") (Powell, J., concurring); *Zarecor v. Morgan Keegan & Co.*, 801 F.3d 882, 892 (8th Cir. 2015) (holding that American Pipe does not "toll the time limits for state-law claims that were not pleaded in the [] class action."); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 9 CV 3690, 2015 WL 3988488, at *30 (N.D. Ill. June 29, 2015) ("*American Pipe* does not apply to toll new claims. . . . Because these three claims did not appear in the [original] complaint, they are time barred, and *American Pipe* tolling cannot save them.").

13

sometime within the two years preceding the filing of her original Complaint (from September 9, 2020 to September 9, 2022).  This argument fails in light of the material facts.  First, Plaintiff received her multiple myeloma diagnosis in 2011 and at that time believed that the Facility may have caused it.  Russell Dep. at 40:6-42:15.  About a decade before then, around the time of her father's death in 2000, Plaintiff regularly read the *Metropolis Planet*, which published articles about the Facility processing uranium and about leaks and shutdowns at the Facility.  Russell Dep. at 23:5-24:22.  Within a year or two of her father's death, Plaintiff learned of a compensation program for Facility workers who developed cancer and convinced her mother to apply to the program.  Russell Dep. at 19:16-20:11; 27:1-4 (her mother received $150,000 on the basis that her father's working in or living near the Facility was "at least a contributing cause" of his death).

Second, even putting aside her decades of general awareness of the Facility and claims of it allegedly causing cancer in Metropolis (where she herself lived for about 31 non-continuous years), Plaintiff engaged her counsel *at the very latest* in March 2020 to investigate the potential connections between the Facility and her cancer.  *See* Russell Dep. at 50:16–52:23; 69:9-70:9.  These circumstances show that, far from suffering from an "irremediable lack of information" (*see Williams*, 948 N.E.2d at 567), Plaintiff had ample notice regarding both her injury and its potential alleged causes.  The facts do not and cannot support the application of equitable tolling.

   C. <u>The continuing violation rule is inapplicable to this case</u>

The continuing violation rule applies where a tort involves "a continuing or repeated injury." *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 85 (Ill. 2003).  In such a case, the statute of limitations does not begin to run "until the date of the last injury or the date the tortious acts cease." *Feltmeier*, 798 N.E.2d at 85; *see also LAJIM, LLC v. Gen. Elec. Co.*, 917 F.3d 933, 951 (7th Cir.

2019). The purpose of the continuing violation doctrine is to prevent the statute of limitations from "preclud[ing] claims before they are ripe for adjudication." *Feltmeier*, 798 N.E.2d at 88.

Plaintiff alleges that she was exposed to radiation from the Facility while she lived within close proximity to the Facility caused her cancer. First Am. Compl. at V, ¶¶ 30, 32, 22, 25-27. Plaintiff's First Amended Complaint does not allege that the Facility continued to harm Plaintiff once she moved out of Metropolis in 2003. *See, e.g.*, *Id.* at V, ¶¶ 32, 25, 27, 67-68; VI, ¶¶ 2-5, 8, 14; VII, ¶ 6 (alleging only past harm). Accordingly, on the face of Plaintiff's First Amended Complaint and as confirmed in her testimony,[6] the latest conceivable date Plaintiff could allege any violation "continued to" was 2003. In light of Plaintiff's 2011 diagnosis and the latest date that she would have engaged counsel (in or before March 2020), the continuing violation doctrine is inapplicable to this case.

## **CONCLUSION**

For the reasons set forth herein, Defendant Honeywell International Inc. respectfully asks the Court to grant its Motion for Summary Judgment and dismiss the First Amended Complaint of Plaintiff Teresa Russell.

---

[6] Since 2003, Plaintiff has lived in Paducah, Kentucky, about a 20 mile drive from the Honeywell facility. Russell Dep. at 7:16-20; 10:18-23.

Dated:  May 8, 2023                                   Respectfully submitted,


                                                      By: */s/ John E. Galvin*
                                                           John E. Galvin, #6205935
                                                           Suzanne P. Galvin, #6209276
                                                           THOMPSON COBURN LLP
                                                           One US Bank Plaza
                                                           St. Louis, MO  63103
                                                           (314) 552-6341
                                                           (314) 552-7000 (Fax)
                                                           jgalvin@thompsoncoburn.com
                                                           sgalvin@thompsoncoburn.com

                                                           Stephanie B. Weirick (*Pro Hac Vice*)
                                                           Kenneth L. Chernof (*Pro Hac Vice*)
                                                           Michael D. Daneker (*Pro Hac Vice*)
                                                           Arnold & Porter Kaye Scholer LLP
                                                           601 Massachusetts Ave., NW
                                                           Washington, DC  20001
                                                           (202-942-5000
                                                           Stephanie.weirick@arnoldporter.com
                                                           Ken.chernof@arnoldporter.com
                                                           Michael.Daneker@arnoldporter.com

                                                           *Attorneys for Defendant*
                                                           *Honeywell International Inc.*

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on this 8th day of May, 2023, a copy of the foregoing was filed using the Court's CM/ECF system, which will send notification of such filing to all counsel of record:

James F. Clayborne, Jr.
CLAYBORNE & WAGNER LLP
525 W. Main Street, Suite 105
Belleville, IL  62220
Tel:  618-239-0187
jclayborne@cswlawllp.com

Katrina Carroll
Nicholas R. Lange
Kyle Shamberg
LYNCH CARPENTER, LLP
111 W. Washington Street, Suite 1240
Chicago, IL  60602
Tel:  312-750-1265
katrina@lcllp.com
nickl@lcllp.com
kyle@lcllp.com

Richard K. Kruger
KRUGER FIRM
110 W. Fifth Street
Metropolis, IL  62960
Tel:  618-524-9302
richard@richardkrugerlaw.com

Paul F. Henry
PAUL HENRY LAW FIRM
508 Market Street
Metropolis, IL  62960
Tel:  618-744-6633
paul@paulhenrylaw.com

Celeste Brustowicz
Victor T. Cobb
COOPER LAW FIRM, LLC
1525 Religious Street
New Orleans, LA  70130
Tel:  504-399-0009
cbrustowicz@clfnola.com
vcobb@clfnola.com

Kevin W. Thompson
David R. Barney, Jr.
Stephen Wussow
THOMPSON BARNEY
2030 Kanawha Boulevard, East
Charleston, WV  25311
Tel:  304-343-4401
kwthompsonwv@thompsonbarneylaw.com
drbarneywv@gmail.com
swussow@thompsonbarneylaw.com

Ron A. Austin
RON AUSTIN & ASSOCIATES, LLC
400 Manhattan Blvd.
Harvey, LA  70058
Tel:  504-227-8100
raustin@ronaustinlaw.com

*COUNSEL FOR PLAINTIFF*

                          */s/ John E. Galvin*