IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| TERESA RUSSELL,, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Case No. 22-cv-2112-SMY |
| vs. | ) | |
| | ) | (Consolidated with 21-cv-485 [Master |
| HONEYWELL INTERNATIONAL, INC., | ) | Consolidated Case], 22-cv-1661, 22-cv- |
| | ) | 2114, 22-cv-2344, and 23-cv-2) |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Teresa Russell filed the instant lawsuit against Defendant Honeywell International, Inc. ("Honeywell"), asserting liability for violations of the Price-Anderson Act, 42 U.S.C. § 2210 *et seq.*, negligence, and strict liability for exposing her community of Metropolis, Illinois to radioactive materials.  Honeywell moves for summary judgment (Doc. 81), which Russell opposes (Doc. 86).  For the following reasons, the motion is **GRANTED**.

### Factual Background

Construed in the light most favorable to Plaintiff, the evidence and reasonable inferences establish the following facts relevant to the pending summary judgment motion: Plaintiff Theresa Russell has resided in Paducah, Kentucky since 2003 (Doc. 81-1, p. 7, 10).  She resided in Metropolis, Illinois from 1968 to 2003 at addresses approximately one mile from the Facility.  *Id.* at pp. 12-13.

Russell's father worked at Honeywell's Metropolis facility ("Facility") for 45 years until his retirement in 1992 or 1993.  *Id.* at pp. 16, 19, 22.  Russell's father was diagnosed with colon cancer in December 1999 and died a month later.  *Id.* at pp. 23-26.  Russell would regularly read

the *Metropolis Planet* around the time of her father's death and recalled seeing articles in the paper about the Facility processing uranium and about leaks and shutdowns at the Facility. *Id*. at pp. 23-24. Following her father's death, Russell encouraged her mother to apply for a program offering compensation to former Facility employees who had cancer. *Id*. at pp. 26-27. Russell's mother received $150,000 from the program on the basis that her father's working at the Facility was "at least a contributing cause" of his death. *Id*. at pp. 19-20.

Russell was diagnosed with multiple myeloma in October 2011 by Dr. Chua, an oncologist in Paducah, Kentucky. *Id*. at p. 57. Dr. Chua referred Russell to Dr. Frits van Rhee in Little Rock, Arkansas. Within several weeks of the referral, Russell began receiving testing and treatment. *Id*. at pp. 38-39. Near the start of her tests and treatment at Dr. van Rhee's clinic, Russell received information from the clinic regarding the potential causes of her cancer, including information that plants emitting things into the air can be a "major cause" of multiple myeloma. *Id*. at pp. 40-42. Russell did not receive a healthcare provider's opinion about the cause of her multiple myeloma, but she believed that her proximity to the Facility could have had something to do with her diagnosis:

> **Q:** Okay. And at that point in time when you heard that you thought yours was probably related to something from the facility that got wrongfully released?
>
> **A:** I did.

*Id*. at p. 42.

At some point prior to the COVID-19 pandemic, Russell joined a multiple myeloma support group. *Id.* at pp. 34, 50-51. Craig Bass was also a member of the group. Bass was a former Facility employee who informed Russell that lawyers were bringing claims against Honeywell. *Id*. at pp. 50-52, 69. At that time, Russell already thought that her cancer was related to the Honeywell facility, so she decided to talk to the lawyers. *Id*. at p. 52.

Russell met in-person with the Kruger Law Firm in Metropolis to investigate her potential claims against Honeywell in connection with her cancer. *Id*. at pp. 50-52; pp. 69-70. She did not recall the year, but testified it was prior to the pandemic. *Id*. Russell signed a Retention Agreement with the Kruger Law Firm in November 2018 (Doc. 87-3). The Retention Agreement states in relevant part:

> I am glad that you had the opportunity to talk us about the claims that you wish to pursue against Honeywell international, inc. and/or others (collectively the "Potential Defendants") for damages that you claim to have sustained as a result of you or your property being exposed to radioactive material. The firms…are prepared to pursue a class action lawsuit on your behalf. The class you will represent consists of all persons whose o [sic] property was contaminated with radioactive material in connection with the operations of the Potential Defendants' facilities in Metropolis, Illinois…

Doc. 87-3, p. 1

Dr. Phillip Plato was retained by the Thompson-Barney Law Firm and the Cooper Law Firm to assess whether Russell was exposed to radiation from the Facility and if the exposure was significant enough to have potentially caused her thyroid cancer (Doc. 86-2, ¶¶ 2, 5). In his Declaration, Dr. Plato avers that Russell's attorneys began investigating "whether the Metropolis Plant created a cancer risk for Ms. Russell" in 2019 by collecting "samples of indoor household dust and outdoor soil." *Id*. at ¶ 5.5. The samples were sent to a radiochemistry laboratory to determine radioisotope concentrations in early 2020, and the results were received a few months later. *Id.*

Russell filed the instant lawsuit against Honeywell on September 9, 2022, alleging liability for violations of the Price Anderson-Act and negligence.

## Discussion

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986). The moving party is entitled to summary judgment if the non-moving party "has

failed to make a sufficient showing on an essential element of her case with respect to which she

has the burden of proof." *Celotex*, 477 U.S. at 323. If the evidence is merely colorable, or is not

sufficiently probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 249–50 (1986). Any doubt as to the existence of a genuine issue of material fact must

be resolved against the moving party. *Lawrence v. Kenosha County,* 391 F.3d 837, 841 (7th Cir.

2004).

Honeywell moves for summary judgment, arguing that Russell triggered the statute of

limitations either at the time of her cancer diagnosis in 2011 or at the time of her initial visit to the

Krueger Law Firm in 2018. Illinois imposes a two-year statute of limitations on personal injury

claims. 735 Ill. Comp. Stat. Ann. 5/13-202. In general, under Illinois law, the statute of limitations

clock begins to run when facts exist that would authorize the bringing of a cause of action.

Relatedly, "Illinois uses the discovery rule, so that the statute of limitations clock does not start

running until the injured party knows or reasonably should have known both that she was injured

and that her injury was wrongfully caused by another person." *See Stark v. Johnson & Johnson*,

10 F.4th 823, 828 (7th Cir. 2021). "The rule does not mandate that a plaintiff know with precision

the legal injury that has been suffered, but anticipates that plaintiff be possessed of sufficient

information to cause plaintiff to inquire further in order to determine whether a legal wrong has

occurred." *Healy v. Owens-Illinois, Inc.*, 359 Ill. App. 3d 186, 191 (2005).

Honeywell argues the statute of limitations was triggered when Russell was diagnosed with

multiple myeloma in 2011 or, at the latest, when she engaged the Kruger Law Firm in 2018.

Specifically, invoking the discovery rule, Honeywell contends that Russell knew or should have

known in 2011 that her condition may have been wrongfully caused because she already knew

about the Facility's operations, had read about releases from the Facility, and knew her family had received compensation due to her father's death.  Honeywell further argues that Russell's initial engagement with the Kruger Law Firm in 2018, and their inquiry as to whether her condition was wrongfully caused, triggered the two-year statute of limitations.

Russell contends that her mere suspicion that her multiple myeloma was caused by the Facility was insufficient to trigger the statute of limitations and her initial visit to the Kruger Law Firm was about the possibility of property damage claims against Honeywell.  She argues that at the time, she still did not have a reasonable basis to believe she had been exposed to any radiation from the Facility.

For purposes of the discovery rule, "wrongfully caused" does not mean knowledge of a specific defendant's negligent conduct or knowledge of the existence of a cause of action.  *Castello v. Kalis*, 816 N.E.2d 782, 789 (2004).  Rather, it refers to when the injured party learns that her injury may stem from another's negligence as opposed to natural causes.  *Id*.  That is enough for the law to expect the injured party to investigate a potential cause of action.  *Id.* at 745.

Contrary to her arguments, the evidence indicates that Russell had reasonable belief that her condition was wrongfully caused shortly after receiving treatment.  Russell testified that she received information from the clinic regarding the potential causes of her cancer, including information that plants emitting things into the air can be a "major cause" of multiple myeloma. She testified that after receiving that information, she formed the belief that her multiple myeloma was caused by something wrongfully released from the Facility.  Russell testified that by the time of her initial visit to the Kruger Law Firm, she wanted the firm to investigate whether there was a connection between her multiple myeloma and any material that was wrongfully discharged from the Facility.  The Retention Agreement Russell signed acknowledged that she discussed the claims

that she wished to pursue against Honeywell for damages sustained resulting from her or her property being exposed to radioactive material.

There is no dispute that Russell believed her cancer diagnosis was the result of operations at the Facility.  She admits that she held this belief in 2011 and in 2018 and asked the Kruger Law Firm to investigate this theory.  Either one of these events is sufficient under Illinois law to trigger the statute of limitations.  And although Russell's attorneys collected samples from her property in 2019, they waited more than two years after receiving the results from the radiochemistry laboratory in 2020 to file this claim.

Finally, Russell argues for an extension of the statute of limitations period due to Honeywell's alleged fraudulent concealment.  Illinois extends the statute of limitations to five years when "a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto." 735 Ill. Comp. Stat. Ann. 5/13-215.  To prove fraudulent concealment, a plaintiff must show affirmative acts by the defendant to conceal the cause of action. *See Hagney v. Lopeman*, 147 Ill. 2d 458 (1992).

Similarly, the doctrine of equitable estoppel suspends the running of the statute of limitations during any period in which the defendant took certain active steps to prevent the plaintiff from suing.  *Hollander v. Brown*, 457 F.3d 688 (7th Cir. 2006).  "The test is whether, considering all the circumstances of the case, conscience and honest dealing require that the defendant be estopped." *Id*.  Russell has provided no evidence that Honeywell prevented her from investigating or filing her claims against them.  As such, neither theory can save her claim.

**<u>Conclusion</u>**

For the foregoing reasons, Defendant Honeywell Internal Inc.'s Motion for Summary Judgment (Doc. 81) is **GRANTED.**   The Clerk of Court is **DIRECTED** to enter judgment accordingly and to close this case.

**IT IS SO ORDERED.**

**DATED:  March 14, 2024**

**STACI M. YANDLE**
**United States District Judge**