IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KRISTI BURNETT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 22-cv-2114-SMY |
| vs. | ) |
| | ) (Consolidated with 21-cv-485 [Master |
| HONEYWELL INTERNATIONAL, INC., | ) Consolidated Case], 22-cv-1661, 22-cv- |
| | ) 2112, 22-cv-2344, and 23-cv-2) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Kristi Burnett filed the instant lawsuit against Defendant Honeywell International, Inc. ("Honeywell"), asserting liability for violations of the Price-Anderson Act, 42 U.S.C. § 2210 *et seq.*, negligence due to Honeywell's failure to properly handle radioactive materials, and strict liability for exposing her community of Metropolis, Illinois to radioactive materials. Honeywell moves for summary judgment (Doc. 82), which Burnett opposes (Doc. 86). For the following reasons, the motion is **GRANTED**.

### Factual Background

Construed in the light most favorable to Plaintiff, the evidence and reasonable inferences establish the following facts relevant to the pending summary judgment motion: Kristi Burnett lived within a three-mile radius of Honeywell's Uranium Hexafluoride Processing Facility located in Metropolis, Illinois for a substantial portion of her life. She maintained her address at 750 Airport Road in Metropolis for roughly eleven years (Doc. 82-1, pp.15-16).

On December 22, 2003, Burnett was instructed to evacuate her home due to a release or "leak" of $UF_6$ gas from the Honeywell Facility (Doc. 82-1, at p. 24). Although Burnett was

informed of the leak of radioactive materials, she did not fully understand the scope of its effects, and returned home the next day. *Id.*

The Nuclear Response Commission ("NRC") conducted an investigation following the December 2003 incident (Doc. 86-5, p. 1). At a public exit meeting hosted at the Massac County Courthouse, Honeywell denied any inquiry into potential harms on members of the community caused by the leak. *Id.* Burnett herself did not attend any of the public meetings. She does not recall any promotion of safety measures by authorities or other members of the community (Doc. 82-1, p. 27) and does not recall her home being tested for radioactive materials following the December 2003 incident (Doc. 82-1, p. 50).

Burnett was diagnosed with thyroid cancer in 2012 after a visit to Baptist Hospital in Paducah, Kentucky. (Doc. 82-1, p. 41). Due to the late stage of the cancer, Burnett had surgery to remove a malignant tumor one month after her diagnosis. *Id* at 42. At that time, Burnett had not considered the possibility of a connection between her condition and her proximity to the Honeywell facility, nor did any of her healthcare providers identify any such connection. *Id* at 43. Burnett was only focused on the removal of the tumor from her thyroid and conducted minimal research on the potential causes of her condition. *Id.* In that regard, she testified, "I have looked, but all I really looked at was I had to go on a salt-free diet … once I got it out of my body, I really didn't pay much attention after that there. Just trying to make sure it wasn't growing back." *Id* at 43.

Sometime between 2016 and 2017, Burnett saw the news discussing potential claims against Honeywell for people who lived within a certain radius of the Facility (Doc. 82-1, p. 32). She does not recall the exactly when she saw the advertisement. *Id.* She believes it was broadcasted on the "Channel 6 news" because that was her preferred news outlet. *Id* at 35. Burnett

does recall that both the advertisement and her initial visit to the Kruger Law Firm occurred before she stopped working at Baptist Hospital in 2018 and believes that these events occurred in 2016 or 2017. *Id* at 32. When asked whether at the time she heard the news advertisement did she think "[w]ell, I have had cancer, maybe that's related to the Honeywell facility," Burnett testified, "yes," she did. *Id* at 44. Burnett later testified that she wanted the Kruger Law Firm to investigate whether there was a connection between her "thyroid cancer and any material that might have been wrongfully discharged from the plant." *Id* at 57.

Following the news advertisement, Burnett's mother accompanied her uncle to the Kruger Law Firm to fill out a questionnaire regarding property damage from the Facility's release of radioactive materials. *Id*. According to her testimony, Burnett did not have a complete understanding of her uncle's claims against Honeywell at the time of their initial visits to the lawyers. *Id* at 35. She was only aware that her "mom had went with him because he didn't want to go by himself up there." *Id* at 29. Because the advertisement targeted people living in proximity to the Honeywell facility, Burnett's mother also filled out a questionnaire with the law firm after instructions from her uncle Stephen. *Id* at 30. Burnett, with her uncle's advice, also visited the Kruger Law Firm to fill out a questionnaire regarding property damage. *Id*. It was at this time that Burnett began connecting her thyroid cancer to her proximity to the Facility and sought the Krueger Law Firm to investigate her claim. *Id* at 31.

Dr. Phillip Plato was retained by the Thompson-Barney Law Firm and the Cooper Law Firm to assess whether Burnett was exposed to radiation from the Facility and if the exposure was significant enough to have potentially caused her thyroid cancer (Doc. 86-2, ¶¶ 2, 5). In his Declaration, Dr. Plato avers that Burnett's attorneys began investigating "whether the Metropolis Plant created a cancer risk for Ms. Burnett" in 2019 by collecting "samples of indoor household

dust and outdoor soil." *Id*. at ¶ 5.5. The samples were sent to a radiochemistry laboratory to determine radioisotope concentrations in early 2020, and the results were received a few months later. *Id.*

Burnett filed the instant lawsuit against Honeywell on September 22, 2022, alleging liability for violations of the Price Anderson-Act and negligence.

## Discussion

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party is entitled to summary judgment if the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). Any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Lawrence v. Kenosha County,* 391 F.3d 837, 841 (7th Cir. 2004).

Honeywell moves for summary judgment, arguing that Burnett triggered the statute of limitations either at the time of her thyroid cancer diagnosis in 2012 or at the time of her initial visit to the Krueger Law Firm in 2018. Illinois imposes a two-year statute of limitations on personal injury claims. 735 Ill. Comp. Stat. Ann. 5/13-202. In general, under Illinois law, the statute of limitations clock begins to run when facts exist that would authorize the bringing of a cause of action. Relatedly, "Illinois uses the discovery rule, so that the statute of limitations clock does not start running until the injured party knows or reasonably should have known both that she was injured and that her injury was wrongfully caused by another person." *See Stark v. Johnson*

*& Johnson*, 10 F.4th 823, 828 (7th Cir. 2021). "The rule does not mandate that a plaintiff know with precision the legal injury that has been suffered, but anticipates that plaintiff be possessed of sufficient information to cause plaintiff to inquire further in order to determine whether a legal wrong has occurred." *Healy v. Owens-Illinois, Inc.*, 359 Ill. App. 3d 186, 191 (2005).

Honeywell first argues the statute of limitations was triggered when Burnett was diagnosed with thyroid cancer in 2012. Specifically, invoking the discovery rule, Honeywell contends that Burnett knew or should have known that her condition may have been wrongfully caused because she testified that she "understood that the facility worked with radioactive materials, that the release which prompted her evacuation [in 2004] may have been of radioactive material, and that radiation can cause cancer" (Doc. 82, p. 8). The Court disagrees.

Viewing the facts in a light most favorable to Burnett, a reasonable jury could find that she did not have sufficient information at the time of her diagnosis to draw a connection between her condition and her proximity to the Honeywell facility. The evidence does not demonstrate that Burnett herself was aware of such connection. Burnett testified that her only objective at that time was to prevent the cancer from reoccurring – not investigating what caused it. And she did not receive any medical advice that hinted towards a connection between her cancer diagnosis and her proximity to the Honeywell facility. "The discovery rule does not hold plaintiffs to knowing the inherently unknowable." *Wheeler v. C.R. Bard, Inc.*, No. 19-CV-08273, 2022 WL 971394 (N.D. Ill. Mar. 31, 2022). As such, summary judgment cannot be granted based on the accrual of the statute of limitations in 2012.

Next, Honeywell asserts that Burnett's claim accrued in 2018 at the latest and time barred. Honeywell argues that Burnett's initial engagement with the Kruger Law Firm, and their inquiry as to whether her condition was wrongfully caused, triggered the two-year statute of limitations.

Burnett counters that her initial visit to the Kruger Law Firm was about the possibility of property damage claims against Honeywell and that at the time, she still did not have a reasonable basis to believe she had been exposed to any radiation from the Honeywell facility.

For purposes of the discovery rule, "wrongfully caused" does not mean knowledge of a specific defendant's negligent conduct or knowledge of the existence of a cause of action. *Castello v. Kalis*, 816 N.E.2d 782, 789 (2004). Rather, it refers to when the injured party learns that her injury may stem from another's negligence as opposed to natural causes. *Id*. That is enough for the law to expect the injured party to investigate a potential cause of action. *Id.* at 745.

Contrary to her arguments, the evidence indicates that Burnett had reasonable belief that her condition was wrongfully caused at the time of her initial visit to the law firm. Burnett testified she wanted the Kruger Law firm to investigate whether there was a connection between her thyroid cancer and any material that was wrongfully discharged from the plant. She also testified she learned of potential claims against Honeywell from her uncle, Stephen Krueger, who, at the time, was raising his own personal injury claim against the facility. Burnett's awareness of her uncle's case greatly undermines her claim that she did not have enough knowledge to draw any connection between her condition and the Honeywell facility before she filed suit on September 9, 2022 (four years later). Moreover, Burnett's attorneys collected samples from her property in 2019 and waited more than two years after receiving the results from the radiochemistry laboratory in 2020 to file this claim.

Finally, Burnett argues for an extension of the statute of limitations period due to Honeywell's alleged fraudulent concealment. Illinois extends the statute of limitations to five years when "a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto." 735 Ill. Comp. Stat. Ann. 5/13-215. To prove fraudulent

concealment, a plaintiff must show affirmative acts by the defendant to conceal the cause of action. *See Hagney v. Lopeman*, 147 Ill. 2d 458 (1992).

Similarly, the doctrine of equitable estoppel suspends the running of the statute of limitations during any period in which the defendant took certain active steps to prevent the plaintiff from suing. *Hollander v. Brown*, 457 F.3d 688 (7th Cir. 2006). "The test is whether, considering all the circumstances of the case, conscience and honest dealing require that the defendant be estopped." *Id*. Burnett has provided no evidence that Honeywell prevented her from investigating or filing her claims against them. As such, neither theory can save her claim.

## Conclusion

For the foregoing reasons, Defendant Honeywell International Inc.'s Motion for Summary Judgment (Doc. 82) is **GRANTED**. The Clerk of Court is **DIRECTED** to enter judgment accordingly and to close this case.

**IT IS SO ORDERED.**

**DATED: March 14, 2024**

**STACI M. YANDLE**
**United States District Judge**