IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| AUTUMN FUNKHOUSER-WARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 22-cv-2344-SMY |
| vs. | ) |
| | ) (Consolidated with 21-cv-485 [Master |
| HONEYWELL INTERNATIONAL, INC., | ) Consolidated Case], 22-cv-1661, |
| | ) 22-cv-2112, and 23-cv-2) |
| Defendant. | ) |
| | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Autumn Funkhouser-Ward filed the instant lawsuit against Defendant Honeywell International, Inc. ("Honeywell"), asserting liability for violations of the Price-Anderson Act, 42 U.S.C. § 2210 *et seq.*, and negligence. Honeywell moves for summary judgment (Doc. 129), which Funkhouser-Ward opposes (Doc. 156). For the following reasons, the motion is **GRANTED**.

### Factual Background

Construed in the light most favorable to Plaintiff, the evidence and reasonable inferences establish the following facts relevant to the pending summary judgment motion: Funkhouser-Ward lived in Metropolis, Illinois for approximately 26 years (Doc. 129-1, pp. 23, 27-28, 30). She has lived in Anna, Illinois, which is approximately an hour from Metropolis, since 2019. *Id.* at p. 7.

Funkhouser-Ward first became aware of the existence of the Facility in 2001 when she moved to 14 Grace Drive, which is less than one mile from the Facility (Doc. 129-1, p. 31). She testified that there was a release event at the Facility between 2003 and 2006 which lead her to believe that the Facility's work with uranium and radioactive hazardous materials was "an actual

issue." (Doc. 129-1, pp. 32-33). Her family temporarily evacuated their home until they were notified it was clear to return. *Id*. at pp. 33-36.

A second evacuation event occurred within a month of the first. *Id*. at p. 37. After the second evacuation, Funkhouser-Ward read in the newspaper that people who lived near or worked at the Facility reported seeing particles or other visible material in the sky. *Id*. at pp. 37-38. She was concerned about living near the Facility after these events, particularly due to potential risks that releases from the Facility could pose to her sons. *Id*. at pp. 40-41. She was also concerned about the releases at the Facility because in 2004 or 2005, she found dead birds in her backyard and had to euthanize her dog after finding the dog gurgling/foaming at the mouth. *Id*. at pp. 43-44.

Funkhouser-Ward was diagnosed with papillary carcinoma, a form of thyroid cancer, by Dr. Shawn Jones in Paducah, Kentucky in March 2014 (Doc. 129-1, pp. 47-49). At the time of her diagnosis, she did not think that her cancer was related to the Facility, and she did not at that time conduct any research or receive any information (from her doctors or otherwise) about the kinds of things that could cause her cancer. *Id*. at pp. 48-50.

Funkhouser-Ward moved to a home outside of Metropolis in 2016. She testified that the family "moved as soon as we could find a place" in order "[t]o get away from Honeywell" because she "felt like it was poisoning [her] family." (Doc. 129-2, p. 64). Around that time, she learned that the band director at Massac County High School, who was about her age, developed a brain tumor (Doc. 129-1, p. 27). Funkhouser-Ward "definitely" associated his brain tumor with the Facility because he was "outside all the time, out on the football field" for band practice. *Id*. at p 71.

Sometime in or before 2018, Funkhouser-Ward saw an advertisement from the Kruger Law Firm in the newspaper regarding the firm's investigation of potential claims related to the Facility (Doc. 129-1, pp. 74-75). She wanted the Kruger Law Firm to investigate the Facility because she believed the attorneys would help determine whether the Facility was a potential cause of her cancer. *Id*. at pp. 75-76. Funkhouser-Ward visited the law firm and filled out paperwork with general information about herself. Around a week or two later, the firm called her back to notify her that they were going to move forward with her case. *Id*. at pp. 62-65.

Funkhouser-Ward completed a Metropolis Health Survey in connection with her potential claims in 2018 (Doc. 129-3). The Metropolis Health Survey stated that plaintiffs' counsel were "concerned about the possibility that radioactive contamination originating at [the Facility] may have increased the level of cancer in adults and genetic effects in children in your area," and asked for information regarding any cancer diagnosis (Doc. 127-4, at pp. 1-2). In the section of the Survey regarding her cancer diagnosis, Funkhouser-Ward responded: "Thyroid Cancer." *Id.* at 3.

The Thompson-Barney Law Firm and the Cooper Law Firm retained Dr. Phillip Plato as an expert in radiation dosimetry to evaluate radioisotopes found in the environmental samples collected around the Facility (Doc. 157-1, ¶ 2). In his Declaration, Dr. Plato avers that Plaintiff's attorneys began investigating "whether the Metropolis Plant created a cancer risk for Ms. Funkhouser-Ward" in August 2019 when results of "indoor household dust and outdoor soil sampling were sent to me." *Id*. at ¶ 5.5. The samples were sent to a radiochemistry laboratory to determine radioisotope concentrations in early 2020, and the results were received a few months later. *Id.*

Funkhouser-Ward filed the instant lawsuit against Honeywell on October 10, 2022.

### Discussion

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party is entitled to summary judgment if the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). Any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Lawrence v. Kenosha County,* 391 F.3d 837, 841 (7th Cir. 2004).

Honeywell moves for summary judgment, arguing that the limitations period began running no later than upon Funkhouser-Ward's engagement of counsel in 2018. Illinois imposes a two-year statute of limitations on personal injury claims. 735 Ill. Comp. Stat. Ann. 5/13-202. In general, under Illinois law, the statute of limitations clock begins to run when facts exist that would authorize the bringing of a cause of action. Relatedly, "Illinois uses the discovery rule, so that the statute of limitations clock does not start running until the injured party knows or reasonably should have known both that she was injured and that her injury was wrongfully caused by another person." See *Stark v. Johnson & Johnson*, 10 F.4th 823, 828 (7th Cir. 2021). "The rule does not mandate that a plaintiff know with precision the legal injury that has been suffered, but anticipates that plaintiff be possessed of sufficient information to cause plaintiff to inquire further in order to determine whether a legal wrong has occurred." *Healy v. Owens-Illinois, Inc.*, 833 N.E.2d 906, 910 (2005).

Honeywell argues that Funkhouser-Ward's initial engagement with the Kruger Law Firm, and their inquiry as to whether her condition was wrongfully caused, triggered the two-year statute of limitations. Funkhouser-Ward counters that neither she, her counsel, nor their experts could have reasonably or even possibly known of the probable wrongful cause of her injuries until they could establish, at a minimum, that Funkhouser-Ward had ever suffered actual exposure to any level of radiation from the Facility.

For purposes of the discovery rule, "wrongfully caused" does not mean knowledge of a specific defendant's negligent conduct or knowledge of the existence of a cause of action. *Castello v. Kalis*, 816 N.E.2d 782, 789 (2004). Rather, it refers to when the injured party learns that his injury may stem from another's negligence as opposed to natural causes. *Id*. That is enough for the law to expect the injured party to investigate a potential cause of action. *Id.* at 745.

Contrary to her arguments, the evidence indicates that Funkhouser-Ward had reasonable belief that her condition was wrongfully caused at the time of her initial visit to the law firm. She testified that by 2016, she believed that the Facility was poisoning her family and moved her family away from the Facility as soon as they could find another home. In 2018, she visited the Kruger Law Firm because she believed the Facility may have caused her cancer diagnosis and wanted the law firm to investigate any potential connection with the Facility. At that point, she was on notice that her injuries may have been wrongfully caused. In answering questions on the law firm's health questionnaire, Funkhouser-Ward indicated that her diagnosis may have been the result of exposure to radiation.

This case was not timely filed. Although plaintiff's counsel contends that they did not reasonably believe the Facility was the probable wrongful cause of the injury of any plaintiff or potential plaintiff who had ever consulted with them until February 2021, by that point the related

class-action lawsuit had been pending for 33 months. Their arguments are belied by their actions. The undisputed material facts establish that Funkhouser-Ward's attorneys collected samples in 2019, received the results from the radiochemistry laboratory in early 2020, and did not file this lawsuit until October 2022.

Finally, Funkhouser-Ward argues for an extension of the statute of limitations period due to Honeywell's alleged fraudulent concealment. Illinois extends the statute of limitations to five years when "a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto." 735 Ill. Comp. Stat. Ann. 5/13-215. To prove fraudulent concealment, a plaintiff must show affirmative acts by the defendant to conceal the cause of action. *See Hagney v. Lopeman*, 147 Ill. 2d 458 (1992).

Similarly, the doctrine of equitable estoppel suspends the running of the statute of limitations during any period in which the defendant took certain active steps to prevent the plaintiff from suing. *Hollander v. Brown*, 457 F.3d 688 (7th Cir. 2006). "The test is whether, considering all the circumstances of the case, conscience and honest dealing require that the defendant be estopped." *Id*. Funkhouser-Ward has provided no evidence that Honeywell prevented her from investigating or filing claims against it. As such, neither theory can save her claim.

## Conclusion

For the foregoing reasons, Defendant Honeywell International Inc.'s Motion for Summary Judgment (Doc. 129) is **GRANTED.** The Clerk of Court is **DIRECTED** to enter judgment accordingly and to close this case.

**IT IS SO ORDERED.**

**DATED:  June 10, 2024**

**STACI M. YANDLE**
**United States District Judge**